STATE OF WEST VIRGINIA

SUPREME COURT OF APPEALS

**FILED**
February 3, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**JUANITA BARBER,**
**Claimant Below, Petitioner**

**vs.)    No. 14-0359** (BOR Appeal No. 2048845)
                    (Claim No. 2011005014)

**GREENBRIER COUNTY SCHOOLS,**
**Employer Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Juanita Barber, by Patrick K. Maroney, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Greenbrier County Schools, by Jillian L. Moore, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated March 26, 2014, in which the Board affirmed a September 13, 2013, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges reversed, in part, and affirmed, in part, the claims administrator's November 26, 2012, decision which denied a request for a consultation for a possible polysomnography test and the addition of vertigo, deviated nasal septum, hypertrophy of nasal turbinates, and sleep disorder to the claim. The Office of Judges held the claim compensable for vertigo and affirmed the remainder of the claims administrator's decision. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Barber, a guidance counselor, injured her head and lower leg in the course of her employment on August 9, 2010, when she slipped and fell. The claim was held compensable for post-concussion syndrome, fracture of the mala/maxillary, closed skull base fracture without coma, fracture of the orbital floor, impacted cerumen, open wound of the forehead, and lower leg

1

injury by an August 11, 2011, Office of Judges' Order. Ms. Barber was treated by Verna Hanes, M.D., at Greenbrier Valley Medical Center immediately after the injury occurred. A CT scan of the brain, facial bones, and neck was positive for left maxillary fracture. The discharge summary listed the diagnoses of post-concussion syndrome with vertigo and fracture of the left maxillary sinus. In a consultation note, Christopher White, D.O., found that Ms. Barber sustained an orbital fracture. She reported vertigo that was not present before the injury. She also reported sleep disturbance due to restless leg syndrome. A CT scan showed a mildly displaced orbital floor fracture and a maxilla fracture. Alan Desmond, Au.D., evaluated Ms. Barber at the Blue Ridge Hearing and Balance Clinic. He found that all testing was normal and diagnosed her with a history of periodic benign positional vertigo. Ms. Barber was treated again by Dr. White on August 16, 2012. At that time, she reported chronic nasal congestion and trouble sleeping. Dr. White diagnosed vertigo, deviated nasal septum, hypertrophy of nasal turbinates, and sleep disorder and requested that the conditions be added to the claim. Dr. White also requested authorization of a consultation for a possible polysomnography test.

Rebecca Thaxton, M.D., performed a physician review on October 1, 2012, in which she recommended denial of the polysomnography and the addition of deviated nasal septum, hypertrophy of nasal turbinates, and sleep disorder to the claim. She stated that vertigo was already a compensable component. She found that Ms. Barber was diagnosed with a left maxillary sinus fracture immediately following the injury, and a CT scan of the head and face did not document any nose abnormalities. She opined that the deviated septum is not causally connected to the claim, and it is in a different location than the sinus fracture. The requested polysomnography, to evaluate the cause of the sleep disorder, is therefore not medically related or necessary. She also found that hypertrophy of the nasal turbinates is not related to the compensable injury, as is supported by the initial CT scan.

Ms. Barber was evaluated in an independent medical evaluation by Bruce Guberman, M.D., in November of 2011. In a May 14, 2013, letter, he stated that the only diagnoses that are casually related to the claim are closed head injuries, post-concussion syndrome, persistent disequilibrium and vertigo, facial injuries, left maxillary sinus fracture, and laceration of the left frontal area. He opined that Dr. White's diagnoses of deviated septum and/or nasal turbinate hypertrophy are not causally related to the compensable injury. A deviated septum was not noted on the initial CT scan, and this type of injury would not have caused a deviated septum. He also opined that polysomnography testing is not medically necessary for the compensable injury as Ms. Barber had pre-existing sleep problems.

The claims administrator denied Ms. Barber's request for a consultation for possible polysomnography testing and the addition of vertigo, deviated nasal septum, hypertrophy of nasal turbinates, and sleep disorder to the claim on November 26, 2012. On September 13, 2013, the Office of Judges reversed the decision insofar as it denied the addition of vertigo to the claim and affirmed the remainder of the decision. The Office of Judges found that the record clearly demonstrates that vertigo is a compensable component of the claim. Ms. Barber has consistently complained of the condition since the accident occurred and Drs. Hanes, White, Desmond, Thaxton, and Guberman all diagnosed her with vertigo resulting from the compensable injury.

2

The Office of Judges determined that the weight of the evidence does not support a finding that deviated nasal septum, hypertrophy of nasal turbinates, and sleep disorder are compensable components of the claim. The Office of Judges found that the diagnoses were made two years after the compensable injury occurred. Ms. Barber was first diagnosed with the conditions by Dr. White on August 16, 2012. It also found that the medical evidence does not support a causal connection between the diagnoses and the compensable injury. In particular, a CT scan of Ms. Barber's face, performed the day of the compensable injury, showed no indication of a deviated septum or other nasal abnormalities. Further, Drs. Hanes, Desmond, and Guberman all evaluated her following the injury and found no evidence of a deviated septum or nasal turbinate hypertrophy. Both Dr. Guberman and Dr. Thaxton opined that Ms. Barber's deviated septum and turbinate hypertrophy were unrelated to the compensable injury. The Office of Judges concluded that the only medical evidence of record to support causality was the August 16, 2012, report of Dr. White. The report was given little weight due to the fact that Dr. White evaluated Ms. Barber on August 10, 2010, the day after the compensable injury, and found that her nasal cavities were patent bilaterally and that the septum was midline. He documented neither a deviated septum nor nasal turbinate hypertrophy.

The Office of Judges found that Ms. Barber's sleep disorder was also unrelated to the compensable injury. The evidentiary record indicates, and she testified that, the sleep disorder results from breathing difficulties associated with the deviated septum. Because it found that deviated septum is not a compensable condition, the Office of Judges concluded that a sleep disorder caused by the non-compensable condition could not be added to the claim. The Office of Judges therefore also found that the requested consultation for a possible polysomnography test must be denied. It noted that a polysomnography test is used to assess the possible biological causes of sleep disorders. Because the Office of Judges found that sleep disorder is not a compensable component of the claim, it held that the requested consultation was not medically necessary or reasonably required. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on March 26, 2014.

On appeal, Ms. Barber argues that the evidence shows the requested conditions resulted from her compensable injury. Further, her nose injury causes frequent sinus infections and sleep disturbances, which Dr. White opined are the result of trauma. Greenbrier County Schools asserts that the compensable injury occurred two years prior, and Dr. White failed to provide a medical explanation for the lapse in time between the injury and the requested diagnoses. Also, Ms. Barber's complaints of sinus infections and sleep difficulties pre-dated her compensable injury. After review, we agree with the reasoning of the Office of Judges and the conclusions of the Board of Review. The evidentiary record indicates that while Ms. Barber did develop vertigo as a result of her employment, she did not develop a deviated septum, hypertrophy of nasal turbinates, or a sleep disorder. Because the consultation for a possible polysomnography was requested for the non-compensable sleep disorder, it was properly denied.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:   February 3, 2015**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISSENTING:**
Justice Menis E. Ketchum